Before the Second Division, June 21, 1954

**No. 58204.**—Brin Bros. & Senegram *v.* United States, protests 557109–G, etc. (Los Angeles).

Ford, Judge: The suits listed in schedule "A," hereto attached and made a part hereof, were filed by the plaintiff seeking to recover certain sums of money alleged to have been illegally exacted as customs duties upon importations of rags at the port of Los Angeles, Calif. The involved merchandise was classified by the collector as cotton wiping rags under paragraph 922 of the Tariff Act of 1930, and duty was levied thereon at the rate of 3 cents per pound.

Plaintiff makes several claims in its protests, but the claim relied upon is that the merchandise is free of duty under paragraph 1750 of said act.

The involved paragraphs read as follows:

Par. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

Par. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

These protests involve a retrial of the issue presented to this court in *Brin Bros. & Senegram* v. *United States*, the decision in which was reported in 22 Cust. Ct. 127, C. D. 1170. The plaintiff in both cases is the same. The merchandise in both cases is the same, and the classification and claim in both cases are the same.

At the trial of the present cases, on motion of counsel for plaintiff, and without objection on the part of defendant, the record in the previous case was admitted in evidence as a part of the record herein.

Regarding the record in the previous case, this court said:

The plaintiff offered the testimony of two well-qualified witnesses, the first one testifying in substance that the two items assessed with duty and the two items accorded free entry are all practically the same, except that the seller abroad would not guarantee the latter would all be clean and white, whereas the two

items assessed with duty were guaranteed to be clean. The witness also testified as to the percentages of different sizes of the rags included in the four items hereinbefore set out, that is, the percentage of rags that was 144 square inches or less and the percentage that was 288 square inches or less.

The witness, who was a member of the importing firm, readily testified that he sold some of the rags covered by the four items for various purposes, including dust cloths, polishing cloths, wiping cloths, and for paper stock; that he had visited paper mills, where he had seen rags like the four items on the invoice used for making paper, including all sizes here involved; that he had sold "Best Bleached White Rags" and rags similar to all the items on the invoice for making paper or paper stock; that all may be used in the same way for the same purpose; that he had also purchased domestic rags of the same grade as those here involved and sold them for use in making paper; that with the exception of imported rags being damp, there is no difference between domestic and imported rags.

At a second hearing in this case, this witness further testified that all four items on the invoice are practically the same; that he regularly sells the first two items on the invoice for making paper; that the sizes in the different bales make no difference as to their use.

    Q.   Mr. Senegram, would you say then that merchandise such as the first two items on this invoice which we are contesting here are used according to your knowledge principally for paper stock?—A.  Yes, sir.

The second witness had been purchasing rags in large quantities for a period of 20 years from all four corners of the earth for the A. A. Silverton Co. of New York and Holyoke, Mass., his company having a warehouse in the latter city where it grades rags to meet the requirements of each individual paper mill. It was conceded that Holyoke was the largest paper-making center in the United States.

The witness stated that he had visited all, or a great number of the paper mills in Holyoke, including the largest mill there and had witnessed the method of producing pulp from rags and the use of rags for paper stock; that he had seen all of the grades here involved used as paper stock.

    Q.   In all of your experience has the grading of best bleached white rags or second bleached white rags changed in any way with respect to their suitability for use as paper stock?—A.  No; not to my knowledge. They are all bleached white cotton. They have always been suitable for paper.

    \*        \*        \*        \*        \*        \*        \*
    Q.   That is for over 20 years?—A.  Yes, sir.
    Q.   It is the same class of rags, is it not, that has been used during all of that period for paper stock?—A.  Yes.

At the close of plaintiff's testimony, counsel for the defendant made the following motion:

In this case, I have consulted with Mr. Gulick, the Appraiser. We have read the record and we have come to the conclusion that it is unnecessary to offer any testimony on behalf of the Government, because we feel the importer has not made out a *prima facie* case. Under the circumstances, the Government will move to dismiss the importer's protest on the grounds that he has failed to make out a *prima facie* case, and has failed to show a segregation as required by Section 508 of the Tariff Act of 1930, \* \* \* .

Since the defendant did not offer any testimony, we have for consideration only the testimony of the two witnesses for the plaintiff, both of whom were well-qualified by reason of their long experience in dealing in large quantities of such and similar rags. Their testimony, therefore, stands without contradiction, and in our opinion is sufficient to establish a *prima facie* case for the plaintiff.

Plaintiff's witness Silverton testified therein that he became familiar with the use of the involved merchandise through personal experience, by calling on paper mills and offering the merchandise and knowing what their wants were wherever rags are purchased, "All over the United States; all parts of the United States."

Based upon the record in that case, as hereinbefore set out, and the authorities discussed in the opinion, this court held as follows:

Upon a full consideration of the entire record, we are satisfied that the plaintiff has established by uncontradicted evidence that all the merchandise represented by items 321 and 322 on the invoice belonged to that general class and character of rags which were chiefly used for paper making as of the date of the importation of the particular merchandise involved or immediately prior thereto. We therefore hold the merchandise, covered by the two items last above named, entitled to free entry under paragraph 1750 of the Tariff Act of 1930, as alleged by the plaintiff. That claim in this suit is sustained; in all other respects and as to all other merchandise all claims are overruled.

In view of the conclusion reached it is unnecessary to make further reference to the motion of counsel for the defendant to dismiss this suit for failure of the plaintiff to make a *prima facie* case, other than to deny the same. * * *

The above decision was not appealed, and since the Government refused to accept the above decision as a basis for stipulation, the plaintiff herein was forced to try these cases.

In the present case, however, the Government offered the testimony of five witnesses, and the plaintff offered the testimony of two additional witnesses. The Government also offered and there was admitted in evidence, over objection of counsel for the plaintiff, the appraiser's report in each of the protests here involved, made to the collector in compliance with the customs regulations then in force. These reports are couched in the same language and are as follows:

This merchandise consisting of clean cotton rags in sizes of not less than two feet square, free of buttons, hooks and eyes, seams, and other foreign matter and suitable for use as wiping rags in the same condition as imported, is believed to be properly advisorily classified at 3¢ per pound under paragraph 922, Tariff Act of 1930.

So far as the description of the merchandise in the appraiser's reports is concerned, it is not adverse to the plaintiff herein, since this record establishes that merchandise of the description contained in said reports is not only suitable, but is very desirable, for use as paper stock. Any conclusions of the appraiser in said reports are not binding, either upon the collector or this court. Since the collector's classification is presumptively correct, it must be accepted as a fact that the collector found that the involved merchandise consisted of rags, including wiping rags, wholly or in chief value of cotton, which were not chiefly used in papermaking on or about the dates of importation. The collector having classified the merchandise as being wholly or in chief value of cotton, and there being no evidence to the contrary, that finding must be accepted as a fact.

The first witness to testify for the defendant, Anthony Nicoletti, stated that he was vice president of De Beneditto, Inc., 420 Lexington Avenue, New York, N. Y., and had been engaged in handling all grades of waste material, rags, paper stock, and so forth since 1918; that he bought, sold, examined, and did a general rag and paper stock business.

Q. Is that here in New York?—A. Yes, sir.

* * * * * * *

Q. And did you personally sell those rags that you bought here in New York?—A. Yes.

The witness also testified that the rags which he bought were sold in New York, New England, and New Jersey; that the rags which he sold were used for wiping machinery, wiping linotypes in publishing houses, used for dusting, and used for almost any type of dusting purpose; that the best bleached white rags from Japan, in 1930 and 1931, belonged to that kind or class of goods that were chiefly used for wiping rags; that he was familiar with merchandise known as second bleached white rags from Japan in 1930 and 1931, and that such rags were chiefly used for wiping cloths; that, in 1930, he bought in New York anywhere from 75 to 1,000 pounds of such rags; that he did not know whether any one

sells best bleached white rags as paper stock; that he did not sell any best bleached white rags for paper stock, because he never got any Japanese rags; that wiping rags command a price of 2 or 3 cents more per pound than paper stock.

The record shows that the purchasing activities of this witness were confined to New York, N. Y., and that in 1930 he bought in New York from 75 to 1,000 pounds of such rags. With the limited dealings of this witness, both as to quantity and the territory covered, the weight to be accorded his testimony that in 1930 and 1931 best bleached white rags from Japan belonged to that kind or class of goods which were chiefly used as wiping rags, is necessarily limited to the same extent. Under the circumstances, it is doubtful if any consideration or weight should be given such testimony. Particularly is this true when there is uncontradicted testimony from a witness with wide experience that "* * * fifty tons wouldn't be a big sale of so-called wiping rags that have large pieces as well as the small pieces in them."

In regard to the above testimony that the price for wiping rags is higher than the price for paper stock, the invoices in these four protests show the following:

The invoice covered by protest No. 557109–G shows "Best Bleached White Rags" at $60 per 1,000 pounds, "2nd Bleached White Rags" at $53.80 per 1,000 pounds, "Old Underwear Rags" at $81.40 per 1,000 pounds, and "Old Hvy Underwear Rags" at $52.05 per 1,000 pounds. Protest No. 557110–G shows "Best Bleached White Rags" invoiced at $60 per 1,000 pounds, "2nd Bleached White Rags" at $53.80 per 1,000 pounds, and "Old Underwear Rags" at $81.40 per 1,000 pounds. Protest No. 557111–G shows "Best Bchd. White Rags" invoiced at $60 per 1,000 pounds, "Unwashed White Rags" at $40.95 per 1,000 pounds, "Old Underwear Rags" at $81.40, and "Old Hvy. Underwear Rags" at $52.05 per 1,000 pounds. Protest No. 557112–G shows "2nd Bleached White Rags" invoiced at $53.80 per 1,000 pounds, "Best Bleached Mosquito Net" at $85.56 per 1,000 pounds, and "Bleached Old Towel Wip." at $47.33 per 1,000 pounds.

As shown above, the highest invoice price for any merchandise classified as wiping rags and assessed with duty at 3 cents per pound, was $60 per 1,000 pounds, whereas all the merchandise invoiced as "Old Underwear Rags," classified free as paper stock, was invoiced at $81.40 per 1,000 pounds, and the merchandise invoiced as "Best Bleached Mosquito Net," classified free as paper stock, was invoiced at $85.56 per 1,000 pounds.

The testimony of the other four witnesses for the defendant was, in the main, to the same effect as that of witness Nicoletti. According to their own testimony, their combined activities in dealing in rags, wiping rags, and paper stock was limited to New York, New England, New Jersey, Chicago, St. Louis, Oklahoma City, Kansas City, Detroit, and Cleveland. There is no evidence in this record to show that the above localities are the principal centers in the United States where rags, wiping rags, and paper stock were bought, sold, and used.

It is observed that the majority of the witnesses for the defendant testified that they had followed the merchandise which they had sold into consumption and that it was used for wiping machinery, wiping linotypes in publishing houses, for dusting, and similar uses other than for papermaking. However, the use of the merchandise sold by these witnesses does not establish that the involved merchandise belonged to that class or kind of rags which were chiefly used as wiping rags at or about the dates of importation. *Pacific Guano & Fertilizer Co. et al.* v. *United States, infra.*

In *United States* v. *Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395, the Court of Customs and Patent Appeals held that the testimony of one witness was sufficient to establish the chief use of the merchandise there involved by showing its chief use in the States of Washington, Oregon, and California. However, the witness therein testified as follows:

X Q.  The times you saw it used were during that period?—A.  For the past 20 years.

X Q.  In this section of the country?—A.  Yes, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

R. Q.  Do you sell poultry feed?—A.  Yes, sir.

R. Q.  And as Spratt's representative you sell that throughout the United States?—A.  Yes, sir.

R. Q.  Do you know the principal poultry center of the United States?—A.  The three Pacific Coast States, California, Oregon and Washington.

In the case of *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T. D. 42240, in dealing with the question of chief use, the Court of Customs Appeals observed that:

> The fact that high-grade tankage is chiefly used in California as a fertilizer hardly justified the conclusion that such tankage is chiefly used *in the United States* for that purpose.  Bloxham, one of the witnesses for the importer, whose experience was not confined to California, testified positively that all high-grade tankage produced by Swift & Co. in the United States was used between November 15 and April 1 in Kansas, Nebraska, Iowa, Illinois, and the Corn Belt as hog feed.  According to that witness, between April 1 and November 15 the high-grade tankage of Swift & Co. is accumulated and some of it is sold as fertilizer in the Southern States.  Just how much such tankage was sold for fertilizer the witness did not say, and in the absence of evidence to the contrary it must be presumed that most of it is accumulated to be sold as feed.  In view of Bloxham's testimony and of the lack of evidence as to the disposition of high-grade tankage produced by Armour & Co. and Wilson & Co., we can not hold that high-grade tankage was immediately prior to the importation of the goods in issue chiefly used in the United States as fertilizer.
>
> The actual use of the *tankage in controversy* and the chief use of high-grade tankage *in California* does not determine the classification of the merchandise. Whether tankage of the *grade* imported was chiefly used as a fertilizer in the United States was the issue presented.  What the tankage imported was actually used for and the chief use of high-grade tankage in California did not establish the chief use of high-grade tankage in the United States.  Of course, if it had been proven that most of all high-grade tankage, imported and domestic, was used in California and as a fertilizer, a different case might be presented.

In the recent case of *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 C. C. P. A. (Customs) 161, C. A. D. 544, the Court of Customs and Patent Appeals made the following statement regarding the territorial requirements in the proof of chief use:

> In the opinion below, Judge Lawrence, speaking for the court, succinctly stated:
>
>> In order to succeed in their contention that the articles under consideration are not illuminating articles, it was incumbent upon plaintiffs to establish by competent evidence that the articles are not chiefly used for illuminating purposes.  \* \* \* The fact of chief use is difficult to prove.  It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally.  It appears from the record that the testimony of plaintiffs' witnesses to which reference has been made, *supra*, covered a relatively narrow field—in and about New York, with an isolated instance in Oklahoma—which certainly falls short of the requirements of proof of chief use.  \* \* \*

While we accept the issue of chief use of the merchandise in question as controlling in this case and agree with the able discussion of that subject by the trial court, we feel constrained to interject this comment.  Candelabra and candlesticks are of quite common use.  They are, as such, used in many varied ways, well known by most everyone.  It is tempting, therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future.  We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future litigation.  It is to be regretted that the record in the case before us is not in that category.  We find it almost totally unacceptable for such purposes.

In addition to the fact that the witnesses who testified for the defendant had bought and sold rags, wiping rags, and paper stock in only a limited area of the United States, the weight to be given their testimony is further impaired by the fact that they had never seen the involved merchandise, since no samples had been retained by the Government. It is not quite clear to us how any weight can be attached to their testimony, which was based solely upon the invoice description of the merchandise involved. This is particularly true in the case of rags where their quality and other factors vary so widely and the use or uses of these rags are to a large extent dependent upon their quality and these other factors. *United States* v. *Pacific Overseas Co.*, 42 C. C. P. A. (Customs) 1, C. A. D. 559.

Upon a full consideration of this record, for the reasons stated, we feel that the plaintiff has made out a *prima facie* case establishing the fact that the involved rags belong to that class or kind of rags which were at and immediately prior to the involved importations chiefly used for making paper. We also feel that this evidence has not been successfully rebutted by the testimony offered by the defendant. We, therefore, hold all of the merchandise covered by these four protests which was assessed with duty at 3 cents per pound under paragraph 922 of the Tariff Act of 1930 to be entitled to free entry under paragraph 1750 of said act, as claimed by the plaintiff.

To the extent indicated, the specified claim in said suits is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.